UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| LAUREN W. (fka LAURA H.)[1], | Case No.: 3:18-cv-00870-MK |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**KASUBHAI, Magistrate Judge:**

Plaintiff Lauren W. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner's") decision denying her application for a period of disability and disability insurance ("SSDI") benefits under Title II and Supplemental Security Income ("SSI") under Titles XVI of the Social Security Act (the "Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons discussed below, the Commissioner's decision should be reversed and remanded for an immediate calculation and award of benefits.

---

[1] In the interest of privacy, this Findings and Recommendation uses only the first name and the initial of the last name of the non-governmental parties in this case.

1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

Plaintiff applied for SSDI and SSI on December 12, 2013, alleging disability beginning December 31, 2011. Tr. 13.  Her claims were denied initially, and Plaintiff timely requested a hearing before Administrative Law Judge ("ALJ") Rebecca L. Jones on July 19, 2016. Tr. 13, 35.  During the hearing, Plaintiff via counsel amended disability onset date to July 1, 2015. Tr. 13, 48.  The ALJ denied Plaintiff's application in a written decision dated March 17, 2017. Tr. 10-27.  Plaintiff sought review from the Appeals Council, which was denied, rendering the ALJ's decision the final decision of the Commissioner.  Plaintiff now seeks judicial review of the decision.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).  To determine whether substantial evidence exists, a court reviews the administrative record as a whole, "weighing both the evidence that supports and detracts from the ALJ's conclusion." *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.  The initial burden of proof rests upon the claimant to meet the first four steps. *Id.*  If the claimant satisfies her burden with

respect to the first four steps, the burden shifts to the commissioner at step five. *Id.*; *see also*

*Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).  At step five, the Commissioner must

show that the claimant is capable of making an adjustment to other work after considering the

claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R.

§§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).  If the Commissioner fails to meet this burden, then the

claimant is disabled. *Id.*  If, however, the Commissioner proves that the claimant is able to

perform other work existing in significant numbers in the national economy, the claimant is not

disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

In the present case, the ALJ found that Plaintiff was not disabled.  At step one, the ALJ

found that Plaintiff has not engaged in substantial gainful activity since the amended onset date

of July 1, 2015. Tr. 15.  At step two, the ALJ found Plaintiff had the following severe

impairments: "fibromyalgia, degenerative joint disease (DJD) of the bilateral knees, migraine

headaches, obesity, carpal tunnel syndrome (CTS), advanced degenerative changes of the

bilateral thumbs, degenerative arthritis of the right shoulder." *Id.*  At step three, the ALJ found

Plaintiff did not have an impairment or combination of impairments that met or equaled the

requirements of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 18.

Prior to step four, the ALJ determined that Plaintiff retained residual functional capacity

("RFC") that allowed her to perform a range of medium work as defined in 20 C.F.R.

404.1567(c) and 416.967(c). Tr. 19.  Specifically, the ALJ found that Plaintiff was able to: lift

and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for six hours in

an eight-hour workday; sit for six hours in an eight-hour workday; perform work that does not

require climbing and crawling; occasionally climb ramps and stairs; occasionally balance, stop,

bend, kneel, and crouch; occasionally reach overhead and at shoulder height; frequently handle, finger, and feel. *Id.*

At step four, the vocational expert ("VE") classified Plaintiff's past relevant work as: sales marketing representative, Dictionary of Occupational Titles ("DOT") number 271.257-010, light work; sales agent insurance, DOT number 250.257-010, light work; executive assistant front office worker, DOT number 209.562-010, light work; billing clerk, DOT number 214.482-010, sedentary work; and barista / counter attendant, DOT number 311.477-014, light work. Tr. 25.  In comparing Plaintiff's RFC with the physical demands of the above work, the VE testified that a person with Plaintiff's RFC would be able to perform the first four occupations in Plaintiff's past relevant work. Tr. 26.  Based on the VE's testimony, the ALJ found that Plaintiff was "capable of performing past relevant work as a billing clerk, as an executive assistant front office worker, as a sales agent, insurance, and as a sales marketing representative[, which] does not require the performance of work-related activities precluded by the claimant's residual functional capacity." Tr. 25.  Additionally, based on the VE's testimony, the ALJ found that based on Plaintiff's RFC, age, education, and work experience, Plaintiff was capable of making a successful adjustment to other work that exist in significant numbers in the national economy. Tr. 26-7.  Specifically, the ALJ found Plaintiff could perform the following occupations: cashier II, DOT number 211.462-010, light work; and marker, merchandise, DOT number 209.587-034, light work. *Id.*  As a result, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 27.

Plaintiff contends that the ALJ erred by: (1) giving insufficient reasons for discounting Plaintiff's subjective statements; (2) improperly rejecting the opinion of Dr. Rick Nicoski; and

4 – FINDINGS AND RECOMMENDATION

(3) failing to include any limitations in the RFC to account for migraines, despite finding this to be a severe impairment.

## I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p[2] provides that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029 at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by

---

[2] Effective March 28, 2016, SSR 16-3p supersedes and replaces SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, *available at* 2016 WL 1119029.

5 – FINDINGS AND RECOMMENDATION

medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

**A. Childcare**

When an ALJ fails to develop a record with specific details about the claimant's childcare responsibilities, childcare responsibility alone cannot constitute "substantial evidence" for rejecting disability claims. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (holding that the ALJ errored by failing to provide specific details about claimant's childcare responsibilities in rejecting the treating physician opinion).

Here, the ALJ noted that Plaintiff "acknowledged she is able to babysit her two-year old grandchild two to three times a week, which does not seem consistent with the rest of the alleged physical limitations." Tr. 23.  The ALJ further stated: "most notably with regard to the residual functional capacity assessment … is the claimant's admission that she is able to care for a two-year-old child multiple times per week.  This child likely weighs well over 20 pounds, which is the upper limit of the light exertional category.  This means the claimant has acknowledged being able to perform the essential functions of medium work multiple times per week." *Id.* However, at the hearing, the ALJ did not elicit specific details as to the specific physical tasks Plaintiff performs when watching her granddaughter.  For example, no testimony was elicited to identify whether Plaintiff would need to lift the child or for that matter how much the child actually weighed. *See* Tr. 41-42.  The record only provides that Plaintiff would watch her granddaughter two to three times a week when her daughter was also around, was getting ready, or when she would leave for a brief appointment for usually less than an hour and half. *Id.*

Despite the lack of specific details regarding childcare responsibilities, the ALJ inappropriately assumed that Plaintiff "has acknowledged being able to perform the essential

6 – FINDINGS AND RECOMMENDATION

functions of medium work multiple times per week[,]" and that the childcare responsibility "does not seem consistent with the rest of the alleged physical limitations." Tr. 23.  The Court finds that the ALJ erred in discounting Plaintiff's statements by failing to state clear and convincing reasons that are supported by substantial evidence.

### B. Pre-AOD Evidence and Treatment

Plaintiff contends that the ALJ relied heavily on the evidence prior to the amended onset date ("AOD") of July 1, 2015, which is not particularly relevant. Pl.'s Br. 7.  Evidence prior to onset date is not listed as a relevant factor in considering symptoms of impairment. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c).  In her decision, the ALJ stated that she narrowly considered the evidence prior to the AOD "only in an effort to establish the existence of claimant's medically determinable impairments, to evaluate the claimant's symptoms, and to provide a historical context of the claimant's current condition." Tr. 20.  The ALJ then found that Plaintiff's conditions did not worsen after the AOD, on the basis of (a) conservative treatment for rotator cuff injury and pulmonary emboli, (b) migraines being reasonably well controlled with medication, and (c) Plaintiff's reporting that she was about 80% of the time pain free from fibromyalgia in January 2016. Tr. 23.  Regarding Plaintiff's knees, the ALJ found that although the idea of knee replacement surgery has been discussed, "no medical source has recommended that course of treatment at this time." *Id.*

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The ALJ's finding that Plaintiff's fibromyalgia did not worsen after the AOD is erroneous, because Plaintiff was not diagnosed with fibromyalgia until after the AOD. Tr. 592 (doctor's assessment in September 2015 states that the overall impression of Plaintiff's myofascial pain likely represents

7 – FINDINGS AND RECOMMENDATION

fibromyalgia).  The record also shows a worsening of her average pain levels. *Id.* (citing Tr. 551 (November 2015 average pain is 5-6), Tr. 539 (December 2015 average pain is 7)). Additionally, Plaintiff progressively had more pain in her knees as the length of effectiveness of cortisone injections decreased, given the limitations in how frequently she could receive injections. Tr. 529 (first cortisone injection lasted about 6 months, then lasted 3 months twice, then lasted 1 month (December 31, 2015)), Tr. 733 ("There is [*sic*] been decreasing the length of effectiveness going from 6 months to 3 months to one month." (January 26, 2016)).  In June 2016 Plaintiff started using a cane prescribed to her due to knee pain. Tr. 485, 870.  Despite her doctor's recommendation for knee replacement surgery, Plaintiff could not proceed with the surgery because she had not achieved the necessary weight loss. Tr. 699, 824-919.

As to the ALJ's comments regarding conservative treatment for pulmonary embolism, Plaintiff challenges the relevance because it is not the basis of Plaintiff's disability claim. Pl.'s Br. 8 (ECF No. 15).  Since Plaintiff's disability claim is not based on pulmonary embolism, the ALJ's erred in discounting Plaintiff's credibility based on conservative treatment for pulmonary embolism.

Contrary to the ALJ's assertion that Plaintiff's migraines were well-controlled with medication, Plaintiff testified that she had taken emergency migraine medications three times in the week of the hearing; she continued having pain in the back of her head despite reporting her migraines being better with the medication in July 2016 and the pain was constant; she was still using Naratriptan for breakthrough headaches although her migraines were generally well-controlled on Topamax in May 2016. Tr. 57, 792, 717.  Plaintiff had not had a night's sleep uninterrupted by a headache and had multiple ER visits for intractable migraines. Tr. 524-28, 607, 632, 636, 720, 722.

8 – FINDINGS AND RECOMMENDATION

Similarly, as to Plaintiff's fibromyalgia, by focusing on Plaintiff's report that she was about 80% pain free, the ALJ ignored that Plaintiff did not feel her medication was successful for her condition, she rated her pain at 7 out of 10 the month before, and her doctor noted that she was "very symptomatic at this time." Tr. 537, 733.

Based on the medical record, the ALJ's conclusion that Plaintiff's treatment is effective ignores the constellation of Plaintiff's symptoms.

**C. Activities of Daily Living**

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). When considering the factor of daily activities, the Ninth Circuit has repeatedly warned that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1287 n. 7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."). "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

In discounting Plaintiff's statements, the ALJ listed Plaintiff's activities to show that she was not as limited as one would expect. For example, the ALJ explained that Plaintiff facilitates

9 – FINDINGS AND RECOMMENDATION

a group at her church; she mentors an eleven-year-old child twice a week; she started a nonprofit called "Real Gurls" including making regular Facebook posts; she reported that she was independent in her activities of daily living and could perform all aspects of self-care. Tr. 23. The ALJ also gave significant consideration regarding Plaintiff's admission that she was able to care for a two-year-old child multiple times per week. *Id.*

Besides stating Plaintiff's activities generally, the ALJ does not provide specific, clear and convincing reasons for discrediting Plaintiff's subjective statements based on her activities. There is no substantial evidence in the record upon which to find that the level of these activities is inconsistent with Plaintiff's subjective statements.  The record lacks information regarding Plaintiff's specific tasks in her facilitating and mentoring activities, length of time of her volunteer work for each session, and whether she takes breaks and how often. *See generally* Tr. 35-48.  Without sufficiently specific details, the Court cannot conclude that the ALJ's discrediting of Plaintiff's testimony is based on substantial evidence in the record. *See Orteza*, 50 F.3d, at 750 ("the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony").

Additionally, while "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting,'" the ALJ failed to identify how Plaintiff's self-care activities may be transferred to a work setting. *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d, at 603).  Instead, the ALJ offered a boilerplate statement that Plaintiff's activities indicated she was able to work.  The ALJ's rationale is not clear and convincing given the lack of specificity in her findings.

10 – FINDINGS AND RECOMMENDATION

**II. Medical Opinion Evidence**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison*, 759 F.3d at 1012. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating

11 – FINDINGS AND RECOMMENDATION

physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific and legitimate reasons for rejecting a physician's opinion may include reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray v. Commissioner*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995).  An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).  "[T]he opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (citations omitted); *but see id.* at 600 (opinions of non-treating or

12 – FINDINGS AND RECOMMENDATION

nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Here, the ALJ acknowledges that Dr. Nicoski and Dr. Brent as Plaintiff's treating physicians are "in the best position to comment on the claimant's work-related limitations." Tr. 23-24. The ALJ gave partial weight to Dr. Nicoski's opinion with regard to Plaintiff's physical limitations because they are somewhat consistent with the other treating physician, Dr. Brent's opinion and the objective evidence in the record. Tr. 24. However, the ALJ gave little weight to Dr. Nicoski's opinion that Plaintiff would be off task and would miss a significant amount of work each month due to her impairments "as these claims are not supported by the record" and "appear to be largely based upon the claimant's self-report symptoms, with little objective evidence on physical examination and testing throughout the period at issue." *Id.* At the same time, the ALJ gave great weight to Dr. Brent's opinion that Plaintiff would be able to perform work activity because it is generally consistent with the function-by-function opinions of Dr. Nicoski. *Id.*

Dr. Nicoski and Dr. Brent are consistent in their opinions with regard to Plaintiff's physical limitations. *Compare* Tr. 751-52 *and* Tr. 782-83. It is significant, however, that Dr. Nicoski treated Plaintiff more recently than Dr. Brent. *See* Tr. 751-54, 782-84. Although Dr. Brent listed fibromyalgia as one of Plaintiff's medical conditions, the medical record shows that Dr. Brent primarily treated Plaintiff's knee condition and did not treat her fibromyalgia. Tr. 501-04, 515-18, 531-55. Therefore, when Dr. Brent opined that Plaintiff "should be able to function @ desk job" and has "no limit on sitting," his opinion does not take into account limitations caused by Plaintiff's fibromyalgia. Tr. 783. Dr. Nicoski treated Plaintiff's medical conditions including knees, fibromyalgia and migraines and opined that Plaintiff would miss 20% of work.

13 – FINDINGS AND RECOMMENDATION

Tr. 751, 754. While Dr. Nicoski marked that Plaintiff can occasionally lift and carry 25 pounds and frequently lift and carry 10 pounds, which is light work, the ALJ incorrectly stated that Plaintiff "could lift/carry at the medium level." Tr. 23, 752.

Although stating that Dr. Nicoski's opinion has little objective evidence, the ALJ did not offer a detailed and thorough summary or any specific facts or citation of the medical record. Tr. 24. Rather, the ALJ gave little weight to Dr. Nicoski's opinion because it appears to be "largely based upon [Plaintiff]'s self-report of symptoms, with little objective evidence …" *Id.* As discussed above, the ALJ erred in discounting Plaintiff's subjective testimony. Additionally, by merely stating that there is little objective evidence, the ALJ failed to provide interpretations and explanations as to why she, rather than Dr. Nicoski, is correct. *Reddick*, 157 F.3d at 725. This does not satisfy the substantial evidence requirement to discount Dr. Nicoski's opinion. *Garrison*, 759 F.3d at 1012. The ALJ erred in giving little weight to Dr. Nicoski's opinion.

**III. RFC Formulation**

The ALJ has the responsibility of determining a claimant's RFC. 20 C.F.R. § 416.946(c). The RFC is used at step four of the sequential analysis to determine if a claimant is able to perform past relevant work, and at step five to determine if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a). The RFC reflects the most an individual can do. 20 C.F.R. § 416.945. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert ("VE"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). The Court must uphold step four and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff challenges the ALJ's failure to account for the limitations caused by migraines despite finding migraines being a severe impairment at step two. Pl.'s Br. 13 (ECF No. 15); *See* Tr. 19-25. The Commissioner argues that the ALJ did not address the limitations caused by migraines because she found that Plaintiff's migraines are "reasonably well-controlled with medication." Def.'s Br. 10-11 (ECF No. 17); *See* Tr. 23.

As discussed above, because the ALJ erred in her assessment of the effectiveness of migraine treatment, and therefore did not incorporate all of the limitations caused by migraines. The Court finds that the ALJ erred in her RFC formulation.

Pursuant to SSR 85-15, "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability[.]" Had the ALJ considered the limitations caused by migraines, the serious interference by migraines in Plaintiff's ability to work could justify a finding of disability. SSR 85-15.

## RECOMMENDATION

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635

F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).  The Court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*  The "credit-as-true" doctrine leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 2003)).  The reviewing court should decline to credit testimony when "outstanding issues" remain.  *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, as to the first prong of the analysis, the ALJ failed to provide legally sufficient reasons to discredit Plaintiff's subjective testimony and Dr. Nicoski's opinion.  As to the second prong, the Commissioner argues that Plaintiff's subjective testimony and Dr. Nicoski's opinion are both inconsistent with objective evidence in the record, which must be resolved.  These inconsistencies – Plaintiff's activities and child care responsibilities, her pre-AOD work, her conservative treatment, her statement about the effectiveness of fibromyalgia treatment, and Dr. Brent's opinion that she can do sedentary work – have all been found to be legally insufficient reasons to discredit Plaintiff's subjective statements and Dr. Nicoski's opinion.  Accordingly, the second prong of the credit-as-true analysis is met.  As to the third prong, it is clear from the record that had Plaintiff's subjective statements and Dr. Nicoski's opinion been fully credited, the ALJ would have been required to find Plaintiff disabled.  Accordingly, the third prong is met.

16 – FINDINGS AND RECOMMENDATION

Therefore, this Court should reverse and remand this case for the immediate calculation and award of benefits.

## Scheduling Order

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to *de novo* consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 6th day of June 2019.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge

17 – FINDINGS AND RECOMMENDATION